UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| JAMES H. JACOBS, AS TRUSTEE OF THE JAMES H. JACOBS TRUST, and HARRIS, N.A., AS TRUSTEE OF THE ESTATE OF WARREN CASEY, ON BEHALF OF THEMSELVES AND OTHERS SIMILARLY SITUATED,<br><div align=center>Plaintiffs,</div><br><div align=center>v.</div><br>CARNIVAL CORPORATION, CARNIVAL CRUISE LINES, CARNIVAL PLC, CELEBRITY CRUISES, INC., HOLLAND AMERICA LINE, INC., PRINCESS CRUISE LINES, LTD., ROYAL CARIBBEAN CRUISES, LTD., and JOHN DOES 1 through 100,<br><div align=center>Defendants.</div> | No. 06 CV 0606 (DAB) |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION
TO DISMISS THE FIRST AMENDED COMPLAINT BY CARNIVAL
CORPORATION, CARNIVAL CRUISE LINES, CARNIVAL PLC,
HOLLAND AMERICA LINE INC. AND PRINCESS CRUISE LINES, LTD.**

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019-6064
(212) 373-3000

Attorneys for Defendants Carnival Corporation,
Carnival Cruise Lines, Carnival PLC, Holland America Line Inc.,
and Princess Cruise Lines, Ltd.

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ......................................................................................................... ii

Preliminary Statement.................................................................................................................1

Statement of Alleged Facts ........................................................................................................3

Argument ...................................................................................................................................10

I. THE FIRST AMENDED COMPLAINT FAILS TO COMPLY WITH RULE 8 ...................10

II. THIS DISPUTE SHOULD NOT BE  RESOLVED BY THIS COURT ..................................13

    A.    This Court Does not have Subject Matter Jurisdiction Over Plaintiffs'
        Claims ..........................................................................................................14

        1.    Plaintiffs' claims concern only issues of foreign law .................................14

    B.    The Parties Have Selected Which Forum Should Adjudicate Disputes ...............16

        1.    Plaintiffs' claims should be dismissed in order to enforce valid
            forum-selection clauses..............................................................................16

        2.    Plaintiffs' claims against ships licensed by SPAC should be
            arbitrated ...................................................................................................18

    C.    The Action Against the Carnival Defendants Should Be Dismissed
        Pursuant to the Doctrine of *Forum Non Conveniens* .............................................19

        1.    Plaintiffs' choice of forum should be afforded little deference .................20

        2.    The fora selected in license agreements are adequate ...............................21

        3.    The balance of public interest and private interest factors strongly
            favors dismissal.........................................................................................22

Conclusion ................................................................................................................................25

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Aerus LLC* v. *Pro Team, Inc.*,
No. Civ.A. 304CV1985M, 2005 WL 1131093
(N.D. Tex. May 9, 2005)..................................................................................................... 17

*Albany Insurance Co.* v. *Banco Mexicano, S.A.*,
No. 96 Civ. 9473 (DAB), 1998 WL 730337
(S.D.N.Y. Oct. 18, 1998) .................................................................................................. 17

*Ashcroft* v. *Iqbal*,
No. 07-1015, -- U.S. --, 2009 U.S. Dist. LEXIS 3472
(U.S. May 18, 2009) .......................................................................................................... 10

*Bank of America Corp.* v. *Lemgruber*,
385 F. Supp. 2d 200 (S.D.N.Y. 2005).......................................................................... 20, 24

*Bell Atlantic Corp.* v. *Twombly*,
550 U.S. 544 (2007) ..................................................................................................... 10, 11

*Baosteel America, Inc.* v. *M/V "Ocean Lord"*,
257 F. Supp. 2d 687 (S.D.N.Y. 2003)............................................................................... 18

*Bridgeman Art Library, Ltd.* v. *Corel Corp.*,
25 F. Supp. 2d 421 (S.D.N.Y. 1998)................................................................................. 14

*Chelsea Square Textiles, Inc.* v. *Bombay Dyeing and Mfg. Co., Ltd.*,
189 F.3d 289 (2d Cir. 1999).............................................................................................. 19

*De Bardossy* v. *Puski*,
763 F. Supp. 1239 (S.D.N.Y. 1991)................................................................................... 15

*Deloitte Noraudit A/S* v. *Deloitte Haskins & Sells, U.S.*,
9 F.3d 1060 (2d Cir. 1993) ............................................................................................... 19

*Direct Mail Prod. Svcs. Ltd.* v. *MBNA Corp.*,
No. 99 Civ. 10550 (SHS), 2000 WL 1277597
(S.D.N.Y. Sept. 7, 2000).................................................................................................... 14

*Do Rosario Veiga* v. *World Meteorological Org.*,
486 F. Supp. 2d 297 (S.D.N.Y. 2007)............................................................................... 22

*Evolution Online Sys. Inc.* v. *Koninklijke Nederland N.V.*,
41 F. Supp. 2d 447 (S.D.N.Y. 1999).................................................................................. 18

*Fun-Damental Too, Ltd.* v. *Gemmy Indus. Corp.*,
   No. 96 Civ. 1103 (MBM), 1996 U.S. Dist. LEXIS 18653
   (S.D.N.Y. Dec. 17, 1996).................................................................................................. 12

*Georgiadis* v. *The First Boston Corp.*,
   No. 90 Civ. 7672, 1994 U.S. Dist. LEXIS 10263
   (S.D.N.Y. July 27, 1994) ...................................................................................................... 3

*Gulf Oil Corp.* v. *Gilbert*,
   330 U.S. 501 (1947) ........................................................................................................... 20

*Iragorri* v. *United Tech. Corp.*,
   274 F.3d 65 (2d Cir. 2001).................................................................................................. 21

*Kelly* v. *L.L. Cool J.*,
   145 F.R.D. 32 (S.D.N.Y. 1992), *aff'd*, 23 F.3d 398
   (2d Cir. 1994) ..................................................................................................................... 11

*Lobatto* v. *Berney*,
   No. 98 Civ. 1984 (SWK), 1999 U.S. Dist. LEXIS 13224
   (S.D.N.Y. Aug. 26, 1999).................................................................................................... 3

*M/S Bremen* v. *Zapata Off-Shore Co.*,
   407 U.S. 1 (1972)................................................................................................................ 17

*Manetti-Farrow, Inc.* v. *Gucci America, Inc.*,
   858 F.2d 509 (9th Cir. 1988)), *aff'd*, 182 F.3d 898
   (2d Cir. 1999) ..................................................................................................................... 17

*Marvullo* v. *Gruner & Jahr*,
   105 F. Supp. 2d 225 (S.D.N.Y. 2000)........................................................................... 11, 12

*Masters* v. *Wilhelmina Model Agency, Inc.*,
   No. 02 Civ. 4911(HB), 2003 WL 1990262
   (S.D.N.Y. Apr. 29, 2003)..................................................................................................... 13

*In re Merrill Lynch Ltd. Partnerships Litigation*,
   7 F. Supp. 2d 256 (S.D.N.Y. 1997), *aff'd*, 154 F.3d 56
   (2d Cir. 1998) ..................................................................................................................... 13

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
   273 F. Supp. 2d 351 (S.D.N.Y. 2003)................................................................................. 13

*Moses H. Cone Mem'l Hosp.* v. *Mercury Constr. Corp.*,
   460 U.S. 1 (1983)................................................................................................................ 19

*Murray* v. *British Broadcasting Corp.*,
   906 F. Supp. 858 (S.D.N.Y. 1995) ..................................................................................... 22

*Odyssey Re (London) Ltd.* v. *Stirling Cooke Brown Holdings Ltd.*,
    85 F. Supp. 2d 282 (S.D.N.Y. 2000).............................................................................. 22, 24

*Plunket* v. *Doyle*,
    No. 99 Civ. 11006 (KMW), 2001 WL 175252
    (S.D.N.Y. Feb. 22, 2001) ...................................................................................................... 11

*Pollux Holding Ltd.* v. *The Chase Manhattan Bank*,
    329 F.3d 64 (2d Cir. 2003)....................................................................................... 20, 21, 22

*PT United Can Co. Ltd.* v. *Crown Cork & Seal Co., Inc.*,
    138 F.3d 65 (2d Cir. 1998)........................................................................................................ 20

*Quantitative Fin. Software* v. *Infinity Fin. Tech., Inc.*,
    No. 97 Civ. 7879 (LMM), 1998 WL 427710
    (S.D.N.Y. July 28, 1998) ..................................................................................................... 15

*Roby* v. *Corp. of Lloyd's*,
    996 F.2d 1353 (2d Cir. 1993)......................................................................................... 16, 18, 19

*Stewart* v. *Adidas, A.G.*,
    No. 96 Civ. 6670 (DLC), 1997 WL 218431
    (S.D.N.Y. Apr. 30, 1997)........................................................................................................ 23

*Subafilms, Ltd.* v. *MGM-Pathe Communications Co.*,
    24 F.3d 1088 (9th Cir. 1994) ................................................................................................ 12

*The Robert Stigwood Group Ltd.* v. *O'Reilly*,
    530 F.2d 1096 (2d Cir. 1976)........................................................................................... 12, 15

*Victoriatea.com, Inc.* v. *Cott Beverages Canada*,
    239 F. Supp. 2d 377 (S.D.N.Y. 2003)................................................................................... 22

*WorldCrisa Corp.* v. *Armstrong*,
    129 F.3d 71 (2d Cir. 1997).................................................................................................... 14

*Yung* v. *Integrated Transp. Network Group, Inc.*,
    No. 00 Civ. 3965 (DAB)(HBP), 2001 U.S. Dist. LEXIS 24715
    (S.D.N.Y. Sept. 4, 2001) ........................................................................................................ 3

*Yung* v. *Lee*,
    No. 00 Civ. 3965, 2002 U.S. Dist. LEXIS 16655
    (S.D.N.Y. Sept. 5, 2002).......................................................................................................... 3

## STATUTES

9 U.S.C. § 3.................................................................................................................................. 19

28 U.S.C. § 1331 ................................................................................................................ 14

28 U.S.C. § 1332 ................................................................................................................ 14

## OTHER AUTHORITIES

Fed. R. Civ. P. 8 ........................................................................................................... passim

Fed. R. Civ. P. 12(b)(1) ..................................................................................................... 14

Defendants Carnival Corporation, Carnival Cruise Lines, and Carnival PLC (collectively, "Carnival"), Holland America Line Inc. ("HAL"), and Princess Cruise Lines, Ltd. ("Princess") (collectively, the "Carnival Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the First Amended Complaint (the "amended complaint" or the "FAC") of plaintiffs James H. Jacobs and Harris, N.A., as trustee of the Estate of Warren Casey (collectively, "plaintiffs").

<div align="center">

**Preliminary Statement**

</div>

Plaintiffs' amended complaint – just as conclusory and infirm as their first – should be dismissed.

Plaintiffs – the purported copyright owners of the musical *Grease* – fail to state a copyright infringement claim under United States law. As plaintiffs concede, the ships of the Carnival Defendants are foreign-flagged and sail in international waters. In their original complaint, plaintiffs made the conclusory allegation that "within the United States," the Carnival Defendants had "performed and/or presented" works from *Grease.* (Compl. ¶ 40.) On March 25, 2009, the Court dismissed the original complaint for failure to comply with Federal Rule of Civil Procedure 8, holding that plaintiffs had not pleaded "with any specificity *where* the alleged performances took place" and thus the Court could not determine whether it had subject matter jurisdiction. (Memorandum and Order at 4, 13, 16-17, *Jacobs* v. *Carnival*, No. 06 Civ. 606 (DAB) (S.D.N.Y. Mar. 25, 2009) (the "Order"). The Court granted plaintiffs leave to replead and directed that any amended pleading allege specifically where allegedly infringing performances occurred. (*Id.* at 13-15.)

Plaintiffs' amended complaint does not correct the deficiencies of the original complaint.

<div align="center">1</div>

*First*, notwithstanding this Court's order, the amended complaint again rests on only the conclusory assertion – absent any specific factual allegations – that the allegedly infringing performances took place somewhere "in the territorial waters of the United States." (FAC ¶¶ 28-30, 33, 38-42.) In dismissing the original complaint, the Court gave plaintiffs clear direction, noting that they had "failed to submit with any specificity *where* the alleged performances took place; that is, where, literally in the world, the ships were at sea when the performances occurred." (Order at 12-13 (emphasis in original).) Plaintiffs simply ignore the Court's opinion, relying again on patently deficient allegations that still fail to satisfy the pleading requirements of a copyright claim. The same is true of plaintiffs' assertion that the Carnival Defendants prepared and authorized infringing performances from within the United States (FAC ¶ 47), an assertion that does not, as it must, allege that any such acts themselves constituted infringement under U.S. copyright law.

*Second*, the amended complaint provides the Court with no basis to assert subject matter jurisdiction over this action. As the Court correctly held, it is well-settled that United States copyright law has no extraterritorial application. (Order at 11, 16.) Moreover, through well-known performing rights organizations, plaintiffs have licensed defendants to perform publicly the musical works at issue. These licenses govern *all* performances of plaintiffs' works on the Carnival Defendants' ships and mandate the application of foreign law, regardless of where at sea the allegedly infringing acts took place. Therefore, federal question jurisdiction is lacking, and, as the Court found, there is no diversity among the parties. (*Id.* at 17 n.4.)

*Third*, the licenses governing the performance of plaintiffs' works – beyond containing specific choice of law clauses that mandate the application of foreign law – contain either forum-selection or arbitration clauses that designate the Netherlands, England or arbitration in

2

Florida – not New York – as the proper fora.  Courts in this Circuit routinely dismiss or stay claims
to give effect to such forum-selection and arbitration clauses.

    *Finally*, the balance of public and private interests strongly weighs in favor of
dismissal on the grounds of *forum non conveniens*.  Neither plaintiffs nor their claims have any
connection to New York.  Moreover, plaintiffs' claims arise under foreign law; courts in this Circuit
have long recognized the public interest in having forums interpret their own law.

<h3 align="center">Statement of Alleged Facts[1]</h3>

    The Carnival Defendants are worldwide operators of recreational cruise ships.
Carnival currently operates 22 ships; Princess operates 17 ships; and HAL operates 14 ships.  (*See*
Affidavit of Roger Blum ("Blum Aff."), dated June 25, 2009, ¶ 2; Affidavit of Mona Ehrenreich
("Ehrenreich Aff."), dated June 25, 2009,  ¶ 2; Affidavit of Christy Pearson ("Pearson Aff."), dated
June 22, 2009, ¶ 2.)  As detailed in Exhibit 3 to the Declaration of Jana C. Ramsey ("Ramsey
Declaration"), dated June 26, 2009, the Carnival Defendants' ships relevant here were registered (or
"flagged") in foreign territories – Panama, The Bahamas, Bermuda, and the Netherlands.[2]

---

[1] Although we assume the allegations in the amended complaint to be true for purposes of this
motion to dismiss, we reject not only the claims for relief set forth in the amended complaint, but
also the specific factual allegations made therein.

[2] On a motion such as this, which challenges the proper forum for adjudication and subject matter
jurisdiction, it is proper for courts to consider evidence outside the pleadings, such as affidavits.
*See, e.g.*, *Georgiadis* v. *The First Boston Corp.*, No. 90 Civ. 7672, 1994 U.S. Dist. LEXIS
10263, at *3 (S.D.N.Y. July 27, 1994) ("The Second Circuit has held that it is entirely
appropriate for a court to look beyond the complaint and examine any evidence before it, such as
affidavits, in resolving a jurisdictional dispute."); *see also Yung* v. *Integrated Transp. Network
Group, Inc.*, No. 00 Civ. 3965 (DAB)(HBP), 2001 U.S. Dist. LEXIS 24715 (S.D.N.Y. Sept. 4,
2001), *adopted by Yung* v. *Lee*, 2002 U.S. Dist. LEXIS 16655 (S.D.N.Y. Sept. 5, 2002) (relying
on evidence in affidavits in *forum non conveniens* analysis); *Lobatto* v. *Berney*, No. 98 Civ. 1984
(SWK), 1999 U.S. Dist. LEXIS 13224, at *15-*16 (S.D.N.Y. Aug. 26, 1999) (same with respect
to forum selection clause analysis).

***The Carnival Defendants'***
***Performances of* Grease *Works***

As part of the many services and activities provided to passengers, the ships operated by the Carnival Defendants feature entertainment, including revue-type shows with performances of musical works.

### Carnival

Of Carnival's 22 ships, only the *Carnival Glory*, *Carnival Liberty*, *Carnival Miracle* and *Carnival Triumph* featured performances of musical works from *Grease*. (*See* Blum Aff. ¶ 3.) The songs performed aboard these ships are outlined in Exhibit 4 to the Ramsey Declaration and the Blum Affidavit. These ships sail almost entirely outside of United States territorial waters, as detailed in Exhibit 5 to the Ramsey Declaration and the Blum Affidavit.

### Holland America Line

Of HAL's 14 ships, only eight featured revue-type performances that included songs from *Grease*. (*See* Pearson Aff., Ex. A, ¶ 4.) The specific songs performed aboard these eight ships are outlined in Exhibit 6 to the Ramsey Declaration and the Pearson Affidavit. These ships also spend a great deal of time outside of United States territorial waters, as outlined in Exhibit 7 to the Ramsey Declaration and the Pearson Affidavit.

### Princess

Eight of Princess's 17 ships – the *Sapphire Princess*, *Diamond Princess*, *Island Princess*, *Coral Princess*, *Grand Princess*, *Dawn Princess*, *Sun Princess*, and *Regal Princess* – presented an on-board revue which contained certain songs from *Grease*. (*See* Ehrenreich Aff. ¶ 3.) Those songs are listed in Exhibit 8 to the Ramsey Declaration and the Ehrenreich Affidavit. These ships sail mostly outside of U.S. waters, as detailed in Exhibit 9 to the Ramsey Declaration and the Ehrenreich Affidavit.

4

**Licenses Govern Performances of**
**Grease *on the Carnival Defendants' Ships***

The Carnival Defendants are licensed to perform musical works – including musical works from *Grease* – on board their ships through agreements with "performing rights organizations," which are entities that, on behalf of and with the authorization of their members (copyright owners in musical works, including plaintiffs), license the rights for nondramatic public performances of millions of copyrighted musical works in their catalogues for use in radio and television and numerous other public venues.

Plaintiffs have licensed the American Society of Composers, Authors and Publishers ("ASCAP") to license the songs of *Grease* for public performance in the United States. (*See* Ramsey Declaration, Ex. 1.) ASCAP, in turn, has entered into reciprocal agreements with foreign performing rights organizations, including the Netherlands' Vereniging Buma ("BUMA"), the Panamanian Society of Authors and Composers ("SPAC") and the Performing Rights Society, Ltd. of the U.K. ("PRS"), authorizing, on behalf of the copyright owners, those organizations to license the songs of *Grease* in their respective countries. (*See* license agreements between the Carnival Defendants and SPAC, BUMA and PRS, attached herein as Exhibits 1 and 2 to the Blum Affidavit; Exhibits 1 and 2 to Exhibit A of the Pearson Affidavit, and Exhibit 1 to the Ehrenreich Affidavit, respectively.)[3]

None of the licenses at issue extend to, *inter alia*, "dramatic" performances of musical works. Whether the performance of a work is "nondramatic" as opposed to "dramatic" is a central issue of interpretation of the scope of the license grant. That issue will turn upon the interpretation of the licenses at issue under foreign law.

---

[3]  *See also* ASCAP, Affiliated Foreign Societies, http://www.ascap.com/about/affiliated.html (last visited May 25, 2009).

5

**Vereniging Buma ("BUMA")**

Ships registered in the Netherlands obtain the rights to perform *Grease* on the ships

from BUMA. (Pearson Aff., Ex. A. at Ex. 1., Art. 2, ¶ 2.)  The license agreement between BUMA

and the Carnival Defendants contains both choice of law and forum-selection clauses.  Specifically,

the license agreement states that:

> This agreement is governed by and shall be construed in accordance
> with *the laws of the Netherlands*.  The parties hereby agree to submit
> any dispute that cannot be settled amicably to the competent court of
> *Amsterdam, the Netherlands*.

(*Id.* at Art. 6, ¶ 1 (emphasis added).)

**The Panamanian Society of Authors and Composers ("SPAC")**

Ships registered in Panama obtain the rights to perform *Grease* on those ships

from SPAC.  (Blum Aff., Ex. 1, ¶ 1.)  The license agreement between SPAC and the Carnival

Defendants grants to the Carnival Defendants the right to perform publicly the works in the

SPAC catalogue, and works in the catalogues of other performance rights societies, such as

ASCAP, BMI and SESAC.  (*Id.*)

> In addition, the license agreement contains choice of law and arbitration clauses:

> This Contract shall be construed according to *the laws of Panama*.
> Subject to Section 17 hereof, and the parties shall submit to the
> exclusive jurisdiction of the courts residing in Miami-Dade County,
> Florida, U.S.A. in respect of any dispute under this Contract.

(*Id.* ¶ 13) (emphasis added).

> [A]ny unresolved disputes arising pursuant to or in any way related to
> this Contract attached hereto shall be settled by arbitration at a
> mutually agreed upon location in Miami, Florida.  All arbitration
> shall be conducted in accordance with the rules and regulations of the
> American Arbitration Association, in force at the time of any such
> dispute, by a single arbitrator.

(*Id.* ¶ 17.)

6

### The Performing Rights Society Ltd. ("PRS")

Ships registered in The Bahamas or Bermuda obtain the rights to perform *Grease* on those ships from PRS. (*See, e.g.,* Ehrenreich Aff., Ex. 1, ¶ 1.) The license agreement between PRS and the Carnival Defendants contains both choice of law and forum-selection clauses. Specifically, the license agreement states that:

> This license shall be construed according to *English law* and the parties shall submit to the non-exclusive jurisdiction of the English courts in respect of any dispute under it.

(*Id.* ¶ 14 (emphasis added).)

\*     \*     \*

Exhibit 10 to the Ramsey Declaration lists the licenses governing performances on board of each of the Carnival Defendants' ships.

### *Procedural History*

Plaintiffs filed their original complaint on January 25, 2006, on behalf of a purported class of "all owners of the intellectual property of any and every nature whatsoever," alleging that the Carnival Defendants and other cruise operators infringed the copyrights of *Grease* and other unspecified "famous and enormously popular Broadway, off Broadway and other plays." (Compl. ¶¶ 33, 37, 39–42.)

The Carnival Defendants moved to dismiss the complaint on numerous grounds, including lack of subject matter jurisdiction over alleged violations of U.S. copyright law predicated on extraterritorial acts, the fact that the ships' licensing agreements require litigation or arbitration elsewhere and designate foreign law as governing, and because *forum non conveniens* considerations weighed against litigation in federal court in New York. The other defendants – including several

Carnival-affiliated defendants no longer named in the amended complaint – also moved to dismiss on various grounds.[4]

On March 25, 2009, the Court dismissed the complaint without prejudice as to most defendants because of plaintiffs' failure to satisfy the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure.[5]  (Order at 4.)  Addressing the adequacy of the pleadings, the Court criticized the complaint – devoid of any detail – as resting on "broad and conclusory speculation." (*Id* at 12.)  The Court cited a number of key pleading deficiencies.

First, assessing whether plaintiffs had sufficiently asserted copyright infringement claims under U.S. copyright law, the Court held that plaintiffs had "failed to submit with any specificity *where* the alleged performances took place; that is, where, literally in the world, the ships were at sea when the performances occurred."  (*Id.* at 12-13 (emphasis in original).)  The Court found that plaintiffs' "bare-bones" allegations that "within the United States," Defendants "planned, prepared, authorized, [and] developed" plaintiffs' works were "far too general to satisfy Rule 8" and failed to provide Defendants with "fair notice of the charges against them."[6]  (*Id.* at 13-14.)

---

[4]  Defendants Crystal Cruises and Nippon Yusen Kaisha d/b/a NYK Line ("Crystal Defendants"), Carlson Cruises Worldwide, Inc., and Radisson Seven Seas Cruises, Inc. ("Carlson Defendants"), Cunard Line, Ltd., Seabourn Cruise Line, Ltd., Swan Hellenic Cruises, and Windstar Cruises ("Cunard Defendants"), filed motions to dismiss on the grounds that plaintiffs failed to satisfy the pleading requirements under Rule 8 of the Federal Rules of Civil Procedure and failed to state a claim under Rule 12(b)(6). The Crystal Defendants also asserted a lack of subject matter jurisdiction and moved, in the alternative, for a more definite statement pursuant to Rule 12(e). Defendant Costa Cruise Lines, N.V. ("Costa") asserted a lack of personal jurisdiction and failure to state a claim under Rule 12(b)(6). Defendants Royal Caribbean Cruises Ltd., Royal Caribbean International, and Celebrity Cruises, Inc. moved to sever the claims against them and transfer the action to the Southern District of Florida.

[5]  The Court dismissed the complaint with prejudice as to defendant Costa. (Order at 19.)

[6]  The Court also determined that there was "no question that Plaintiffs have failed with these pleadings to allege 'during what time' *any* of the Defendants infringed the copyrights to their works." (Order at 12-13 (emphasis in original).)

Turning to the Carnival Defendants' jurisdictional arguments, the Court acknowledged the "well-settled law that the United States Copyright Act has no extraterritorial application." (*Id.* at 16.) The Court thus noted that it would only have subject matter jurisdiction over "allegedly infringing performances [that] took place within the territorial waters of the United States" and "any preparation [in the United States] that amounted to infringement." (*Id.* at 16-17.) Because plaintiffs had failed to allege with specificity where the alleged infringements occurred, the Court was unable to determine whether it had subject matter jurisdiction over this action and thus denied the Carnival Defendants' motion to dismiss on jurisdictional grounds "at this time." (*Id.* at 4, 17.)[7]

The Court granted plaintiffs thirty days to replead and cure their pleading defects, warning that it was "incumbent on Plaintiffs to provide enough detail about Defendants' allegedly infringing acts and activities, including the time period and place in which they are alleged to have occurred, to provide a sufficient basis for maintaining Plaintiffs' own copyright claims before this Court." (*Id.* at 15, 19-20.)

### The First Amended Complaint

Plaintiffs served the Carnival Defendants with the amended complaint on April 24, 2009.[8] The amended complaint alleges in general and conclusory terms that the Carnival Defendants, "publicly performed and presented portions, of *Grease*" without obtaining "the necessary licenses and/or permissions." (FAC ¶ 20, 31, 35, 43.) Without any factual support,

---

[7] The Court denied the Motion to Sever and Transfer Pursuant to 28 U.S.C. § 1404(a) filed by Royal Caribbean Cruises, Ltd. and Celebrity Cruises, Inc. on the same grounds as the Carnival Defendants' motion. (Order at 17.)

[8] Heeding the Court's advice (Order at 15 n.2), plaintiffs no longer attempt to bring the action on behalf of a class and have not repleaded against several of the previous defendants.

plaintiffs further claim that the Carnival Defendants "altered, modified and changed" music from *Grease* and performed these "modified" excerpts on their cruise ships. (*Id.* ¶ 56.)

Despite this Court's order to provide "enough detail" as to "where, literally in the world, the ships were at sea when the performances occurred" to allow the Court to determine whether any performances occurred in U.S. territorial waters (Order at 13, 15), the amended complaint merely alleges, with respect to every ship of every defendant, that infringing performances took place "in the territorial waters of the United States." (FAC ¶¶ 28-30, 33-34, 38-42.) Although plaintiffs provide some additional detail drawn directly from the Carnival Defendants' affidavits in support of their original motion, plaintiffs do not make a single specific factual allegation as to where in U.S. waters "specific infringements took place." (Order at 11.)

Finally, plaintiffs assert that the Carnival Defendants "are directly and indirectly responsible for such infringement and/or contributory infringement as a result of planning, preparing, and authorizing, in New York and the United States, such acts of infringement." (FAC ¶ 47.) Again, plaintiffs provide no specific allegations concerning the supposed planning and preparation of infringing acts or how such acts would be actionable as infringement.

### Argument

### I.

### THE FIRST AMENDED COMPLAINT
### FAILS TO COMPLY WITH RULE 8

Plaintiffs fail to satisfy the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure and this Court's Order of March 25, 2009.

It is well-settled that Rule 8 requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft* v. *Iqbal*, No. 07-1015, -- U.S. --, 2009 U.S. Dist. LEXIS 3472, at *28-*29 (U.S. May 18, 2009) (*citing Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544,

555 (2007)) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

As the Court held, to provide proper notice of a copyright infringement claim, "'Rule 8 requires that the particular infringing acts be set out with some specificity.'" (Order at 10 (quoting *Kelly* v. *L.L. Cool J.*, 145 F.R.D. 32, 36, n.3 (S.D.N.Y. 1992), *aff'd*, 23 F.3d 398 (2d Cir. 1994)).) Thus, the complaint must allege: "(1) which specific original works are the subject of the copyright claim, (2) that plaintiff owns the copyrights in those works, (3) that the copyrights have been registered in accordance with the statute, and (4) by what acts and during what time the defendant infringed the copyright." (Order at 10 (quoting *Plunket* v. *Doyle*, No. 99 Civ. 11006 (KMW), 2001 WL 175252 (S.D.N.Y. Feb. 22, 2001)); *see also Marvullo* v. *Gruner & Jahr*, 105 F. Supp. 2d 225, 230 (S.D.N.Y. 2000) ("'Broad, sweeping allegations of infringement do not comply with Rule 8.'") (quoting *Kelly*, 145 F.R.D. at 36 n.3). Under these standards, because the alleged infringement involves performances aboard cruise ships, the Court found that it was "incumbent upon the Plaintiffs to allege where the specific infringements took place." (Order at 11.) That is so because the Copyright Act does not apply to extraterritorial acts, and the Court's exercise of jurisdiction depends on the occurrence of infringing performances "within the territorial waters of the United States." (*Id.* at 16-17.)

The amended complaint disregards this Court's clear Order. Like the original complaint, the amended complaint provides *no* specific allegations as to where the alleged infringing performances took place. Rather, as described above, plaintiffs simply parrot the Court's language, alleging without any factual support that all performances occurred "in the territorial waters of the United States." (FAC ¶¶ 28-30, 33, 38-42.) This is no more specific than plaintiffs' previous allegations that Defendants "performed and/or presented" the copyrighted works "within the United

11

States." (Compl. ¶¶ 37, 40, 42.) Simply put, plaintiffs' amended allegations are still too "broad" and "sweeping" to satisfy Rule 8. *Marvullo*, 105 F. Supp. at 230.

So too is the allegation in the amended complaint that the Carnival Defendants "are directly and/or indirectly responsible for such infringement and/or contributory infringement as a result of planning, preparing, and authorizing, in New York and the United States, such acts of infringement." (FAC ¶ 47.) As the Court made clear, it may only exercise jurisdiction over the planning and authorization of performances within the United States if such acts themselves amounted to a violation of U.S. copyright law. (Order at 16-17); *see also Fun-Damental Too, Ltd.* v. *Gemmy Indus. Corp.*, No. 96 Civ. 1103 (MBM), 1996 U.S. Dist. LEXIS 18653, at *19-*20 (S.D.N.Y. Dec. 17, 1996) ("Because Plaintiff has failed to allege an infringement within the United States that led to extraterritorial infringement, the general rule that extraterritorial infringements are not violations of the Copyright Act applies, and the extraterritorial acts of infringement are not within this Court's jurisdiction."). The "[m]ere authorization and approval of copyright infringements taking place outside the United States is not a copyright violation and does not create jurisdiction over those extraterritorial acts." *Id.* at 18 (citing *Subafilms, Ltd.* v. *MGM-Pathe Communications Co.*, 24 F.3d 1088, 1093-94 (9th Cir. 1994)). For example, the hiring of a dance troupe in the United States to perform a work outside the United States would not amount to a violation of U.S. copyright law. *See The Robert Stigwood Group Ltd.* v. *O'Reilly*, 530 F.2d 1096, 1100-01 (2d Cir. 1976) (plaintiffs could not recover for performances of *Jesus Christ Superstar* in Canada, even where they alleged defendants "assembled and arranged in the United States all the necessary elements for the performances in Canada, and then simply traveled to Canada to complete the performances"). Plaintiffs' general (and false) allegation that preparation of performances took

place in New York does not, as it must, allege that this planning itself constituted infringement or any facts to support such an assertion, and thus fails to comply with Rule 8. (See Order at 13.)

Finally, plaintiffs – having had ample opportunity to craft a sufficient complaint and having fallen far short – should not be given another "bite at the apple." *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 273 F. Supp. 2d 351, 390-91 (S.D.N.Y. 2003) (denying motion to amend where plaintiffs failed to follow court's directions regarding pleading); *see also Masters* v. *Wilhelmina Model Agency, Inc.*, No. 02 Civ. 4911(HB), 2003 WL 1990262 (S.D.N.Y. Apr. 29, 2003) ("[P]leading is not an interactive game in which plaintiffs file a complaint, and then bat it back and forth with the Court over a rhetorical net until a viable complaint emerges. Rather, plaintiffs have the responsibility to plead their case adequately, without defendants' or the Court's assistance.") (quoting *In re Merrill Lynch Ltd. Partnerships Litigation*, 7 F. Supp. 2d 256, 276 (S.D.N.Y. 1997), *aff'd*, 154 F.3d 56 (2d Cir. 1998)). Accordingly, the amended complaint should be dismissed with prejudice.

## II.

### THIS DISPUTE SHOULD NOT BE RESOLVED BY THIS COURT

For many other reasons, plaintiffs' claims should not be resolved in this Court. All performances aboard the Carnival Defendants' ships are governed by license agreements that mandate the application of foreign law. Thus, all of the allegedly infringing acts challenged in this case are governed by foreign law. This case, therefore, presents no federal question to be resolved by this Court. As diversity is lacking, as the Court found (Order at 17 n. 4), the Court does not have subject matter jurisdiction over this case.

Moreover, the performances at issue are all governed by license agreements that designate foreign courts or arbitration as the fora to adjudicate disputes, as here, arising under those

agreements.[9] Finally, the doctrine of *forum non conveniens* compels dismissal of cases such as this, because the claims and parties have no connection to the courts of New York.

## A.  This Court Does not have Subject Matter Jurisdiction Over Plaintiffs' Claims

Plaintiffs' claims are not within the subject matter jurisdiction of this Court and therefore should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1). A plaintiff may establish subject matter jurisdiction by alleging claims involving a federal question or by demonstrating complete diversity of the parties. 28 U.S.C. § 1331, 1332. The parties here are not diverse. (Order at 17 n.4.) And plaintiffs fail to clear the federal question jurisdictional hurdle.

### 1.  Plaintiffs' claims concern only issues of foreign law

Under 28 U.S.C. § 1331, federal question jurisdiction exists in actions "arising under the Constitution, laws, or treaties of the United States." There can be no federal question where claims do not involve U.S. law.[10]

---

[9]   Plaintiffs are bound by the license agreements between the Carnival Defendants and the foreign performing rights organizations. The performing rights organizations are express agents of plaintiffs. PRS, BUMA, and SPAC act as licensing and collecting agents for their members. Therefore, the agreements are directly enforceable against plaintiffs. *WorldCrisa Corp.* v. *Armstrong*, 129 F.3d 71, 76 (2d Cir. 1997) (noting that agency relationship is one of several grounds on which an arbitration agreement may bind a non-signatory); *Direct Mail Prod. Svcs. Ltd.* v. *MBNA Corp.*, No. 99 Civ. 10550 (SHS), 2000 WL 1277597, at *3 (S.D.N.Y. Sept. 7, 2000) (finding that a forum-selection clause is binding on a non-signatory where the non-signatory is an "'intended beneficiar[y] entitled to enforce' the clause in question") (citation omitted).

[10]  Plaintiffs conclusorily claim that performances occurring outside the territorial waters of the United States constitute "multiterritorial infringements subject to the jurisdiction of this Court pursuant to the United States Copyright Act, the Berne Convention and the Universal Copyright Convention." (FAC ¶ 46.) The Berne Convention and the Universal Copyright Convention, among other things, guarantee that member states provide the same protection to works created in other member states as they do works created in their own states; these treaties do not create jurisdiction over extraterritorial acts. *See, e.g., Bridgeman Art Library, Ltd.* v. *Corel Corp.*, 25 F. Supp. 2d 421, 430 & n.71 (S.D.N.Y. 1998) (rejecting Berne Convention as a basis for

As the Court acknowledged, it is well-settled that the Copyright Act has no extraterritorial effect. (Order at 16); *accord The Robert Stigwood Group Ltd.*, 530 F.2d at 1101 ("Copyright laws do not have extraterritorial operation"); *Quantitative Fin. Software* v. *Infinity Fin. Tech., Inc.*, No. 97 Civ. 7879 (LMM), 1998 WL 427710, at *1 (S.D.N.Y. July 28, 1998) ("[D]istrict courts do not have subject matter jurisdiction . . . of actions for infringements occurring outside of the United States"). None of the ships owned by the Carnival Defendants are registered in the United States, and ships performing music from *Grease* sail largely outside United States territorial waters. (*See* Ramsey Declaration, Exs. 3, 5, 7, 9.) Indeed, counsel Ronald S. Taft has told *The New York Times* that if defendants here "had no contact with the United States, they would [] be bound by the laws of the country where their ships are registered." (*See* Ramsey Declaration, Ex. 2 at 2.)

Plaintiffs half-heartedly attempt to meet their jurisdictional requirement by conclusorily alleging that the Carnival Defendants' performances occurred "in the territorial waters of the United States." (FAC ¶¶ 28-30, 33, 38-42.) But, as explained above, plaintiffs' revised allegations that allegedly infringing performances took place in the territorial waters of the United States are no more specific than the prior allegations that the works were "performed and/or presented" from "within the United States," (Compl. ¶¶ 40, 42), and do not provide a sufficient basis for subject matter jurisdiction in a United States court. Nor can plaintiffs establish subject matter jurisdiction by relying on the claim that the Carnival Defendants supposedly planned and authorized performances of *Grease* from within the United States, including New York, because, even if true, such allegations do not amount to a violation of U.S. copyright law. (*See supra*, p. 11-12.)

---

jurisdiction); *Quantitative Fin. Software*, 1998 WL 427710, at *3 ("Neither the Berne Convention Implementation Act nor the Berne Convention confers subject matter jurisdiction to entertain an action asserting copyright infringement outside of the United States."); *De Bardossy* v. *Puski*, 763 F. Supp. 1239, 1245 (S.D.N.Y. 1991) (explaining that the Universal Copyright Convention "does not expand a member state's copyright laws extraterritorially").

Finally, *all* of the performances aboard the Carnival Defendants' ships are governed by license agreements. (*See, e.g.*, Ehrenreich Aff., Ex. 1, ¶ 1 (granting license "authorising the public performance in each of the Vessels of any and every musical work . . . in the repertoire of the Society and the societies which … are affiliated to it").) Each of these agreements is explicitly governed by foreign law. Specifically, the choice of law provisions in the BUMA license require application of Dutch law (*see* Pearson Aff., Ex. A at Ex. 1 Art. 6, ¶ 1), while the SPAC and PRS licenses require application of Panamanian law (*see* Blum Aff., Ex. 1 ¶ 13), and English law (*see, e.g.*, Ehrenreich Aff., Ex. 1 ¶ 14), respectively. *See Roby* v. *Corp. of Lloyd's*, 996 F.2d 1353, 1360–61 (2d Cir. 1993) (choice of law provision requiring application of English law enforced).

In sum, plaintiffs' claims hinge on the application of foreign law, not U.S. law, and therefore do not involve a federal question. Thus, because diversity is also lacking (Order at 17 n.4), plaintiffs' claims are not within the subject matter jurisdiction of this Court and should be dismissed.

**B.     The Parties Have Selected Which
            Forum Should Adjudicate Disputes**

If there were any doubt as to where these claims should be adjudicated, the parties here have agreed on the fora – *not* New York – where their disputes should be resolved. Plaintiffs have granted the Carnival Defendants the right to perform musical selections from *Grease* on their respective ships through licenses issued by BUMA, PRS, and SPAC. Each of these licenses contains forum-selection or arbitration clauses that should be enforced.

**1.     Plaintiffs' claims should be dismissed in
             order to enforce valid forum-selection clauses**

First, claims against the Carnival Defendants arising out of allegations concerning performances on board ships governed by performance licenses issued by BUMA must be dismissed in order to enforce the licenses' exclusive forum-selection clause, which mandates adjudication in the Netherlands. (*See* Pearson Aff., Ex. A at Ex. 1, Art. 6, ¶ 1.)

As the Supreme Court said in its seminal decision in *M/S Bremen* v. *Zapata Off-Shore Co.*, forum-selection clauses "should control absent a strong showing that [they] should be set aside." 407 U.S. 1, 15 (1972). In *M/S Bremen*, the Court placed the burden on the plaintiff to make a "strong showing" in order to overcome the presumption of enforceability by demonstrating that "enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Id.* There is no basis for such a showing here: plaintiffs are sophisticated parties who authorized the performing rights organizations to act on their behalf in granting the licenses – including the forum-selection clauses – at issue. Enforcement makes eminent sense in this case, which involves solely issues of foreign law and acts overseas, and over which there is no subject matter jurisdiction. Indeed, allowing the license at issue to be interpreted by hundreds of different courts – instead of the one designated for the job – could lead to hundreds of different interpretations of the license at issue in this suit.

As this Court has held, a forum-selection clause pertains to all disputes if the claims relate to the "'interpretation of the contract.'" *Albany Insurance Co.* v. *Banco Mexicano, S.A.*, No. 96 Civ. 9473 (DAB), 1998 WL 730337, at *5 (S.D.N.Y. Oct. 18, 1998) (*quoting Manetti-Farrow, Inc.* v. *Gucci America, Inc.*, 858 F.2d 509, 514 (9th Cir. 1988)), *aff'd*, 182 F.3d 898 (2d Cir. 1999). As noted above, plaintiffs' copyright claims go directly to the question of what type of performances are permissible under the performance licenses held by the Carnival Defendants. Indeed, "'[i]f enforcement of a provision in the [license] is . . . a defense to a claim, that claim involves a right or remedy under the contract and should fall within the scope of the forum selection clause.'" *Aerus LLC* v. *Pro Team, Inc.*, No. Civ. A. 304CV1985M, 2005 WL 1131093, at *8 (N.D. Tex. May 9, 2005) (citation omitted).

17

Courts in this Circuit routinely dismiss litigation to enforce exclusive forum-selection clauses through dismissal of claims. *See, e.g.*, *Roby*, 996 F.2d at 1366 (affirming dismissal in favor of litigation in England); *Baosteel America, Inc.* v. *M/V "Ocean Lord"*, 257 F. Supp. 2d 687, 689–90 (S.D.N.Y. 2003) (enforcing clause requiring adjudication in "the flag-state" of the ship specified on the bill of lading, which was South Korea); *Evolution Online Sys. Inc.* v. *Koninklijke Nederland N.V.*, 41 F. Supp. 2d 447, 449 (S.D.N.Y. 1999) (dismissing in favor of litigation in the Netherlands).

Likewise, the forum-selection clauses here should be enforced. The forum-selection in the license agreement with BUMA mandates adjudication in the Netherlands. (*See* Pearson Aff., Ex. A at Ex. 1, Art. 6, ¶ 1.) All claims arising out of alleged activities taking place on ships governed by the agreement with BUMA thus should be dismissed.

Similarly, the non-exclusive forum-selection clause in the PRS license agreement should be given considerable weight. That agreement requires all parties to submit to the non-exclusive jurisdiction of the English courts. (*See, e.g.*, Ehrenreich Aff., Ex. 1, ¶ 14.) As that agreement indicates, adjudication in an English forum makes sense because English law governs these claims. (*Id.* ¶ 14.) Plaintiffs cannot object to this designation of England as the preferred forum, as they are bound by the PRS agreement. As a result, claims related to alleged infringements taking place aboard ships governed by the PRS license should also be dismissed.

## 2. Plaintiffs' claims against ships licensed by SPAC should be arbitrated

As noted above, Carnival's license agreement with SPAC requires arbitration. The agreement states, in relevant part, that "any unresolved disputes arising pursuant to or in any way related to this Contract attached hereto shall be settled by arbitration at a mutually agreed upon location in Miami, Florida." (Blum Aff., Ex. 1, ¶ 17.)

Arbitration clauses are considered "presumptively valid," as they are "merely a specialized type of forum selection clause." *Roby*, 996 F.2d at 1363 n.2. In this Circuit, a court determining whether a particular dispute is arbitrable must determine first whether the parties agreed to arbitrate; and second, whether the scope of that agreement encompasses the asserted claims. *Chelsea Square Textiles, Inc.* v. *Bombay Dyeing and Mfg. Co., Ltd.*, 189 F.3d 289, 294 (2d Cir. 1999). Here, the plain language of the arbitration clause in the SPAC license clearly shows that parties agreed to arbitrate disputes "in any way related to" the license. (Blum Aff., Ex. 1, ¶ 17.) As to the second inquiry, the Supreme Court has instructed that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." *Moses H. Cone Mem'l Hosp.* v. *Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *see also Chelsea Square Textiles*, 189 F.3d at 294 ("This bias in favor of arbitration 'is even stronger in the context of international transactions.'") (*quoting Deloitte Noraudit A/S* v. *Deloitte Haskins & Sells, U.S.,* 9 F.3d 1060, 1063 (2d Cir. 1993)). Here, plaintiffs' copyright claims are indisputably "related to" the license – in fact, they cannot be resolved without reference to or construction of this license, and, as a result, fall squarely within the scope of the arbitration agreement.

Where the parties have agreed to arbitration, the Federal Arbitration Act ("FAA") requires a stay "until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. Therefore, this Court should issue an order compelling arbitration, in Miami, of all claims related to alleged infringements aboard ships governed by the SPAC license. (*See* Blum Aff., Ex. 1, ¶ 17.)

**C.    The Action Against the Carnival Defendants
        Should Be Dismissed Pursuant to the
        Doctrine of *Forum Non Conveniens*_____**

Finally, the equitable doctrine of *forum non conveniens* – grounded in considerations of fundamental fairness and sensible judicial administration – grants this Court authority to decline

19

jurisdiction where, as here, a trial in another forum with jurisdiction over the parties would be more convenient and would better serve the ends of justice. *See PT United Can Co. Ltd.* v. *Crown Cork & Seal Co., Inc.*, 138 F.3d 65, 73 (2d Cir. 1998).

In this Circuit, a defendant moving to dismiss on *forum non conveniens* grounds must demonstrate the following: (1) that plaintiff's choice of forum should be afforded less deference; (2) that an adequate alternative forum exists; and (3) that the balance of public interest and private interest factors strongly favors dismissal.[11]  Each of the relevant factors in this case counsels in favor of dismissal of plaintiffs' claims.  This is a case that centers on the claim that the Carnival Defendants performed, on ships registered in the Netherlands, Panama, Bermuda, and The Bahamas sailing outside of United States territorial waters, music from *Grease* in a manner which exceeded the scope of their performance licenses.

### 1.    Plaintiffs' choice of forum should be afforded little deference

Ordinarily, courts begin with the "assumption that a plaintiff's choice of forum will stand unless the defendant can demonstrate that reasons exist to afford it less deference." *Pollux Holding Ltd.* v. *The Chase Manhattan Bank*, 329 F.3d 64, 70-71 (2d Cir. 2003).  This deference, however, is mitigated where forum choice appears to be based on a tactical advantage, such as the

---

[11]  The public interest factors considered by courts in the Second Circuit in deciding a *forum non conveniens* motion are: "(1) preventing congestion of the court's docket; (2) the local interest in having localized controversies decided at home; (3) the appropriateness of trying a case in a forum that is at home with the state law that must govern the case; (4) the avoidance of unnecessary problems in conflict of laws, or in the application of forum law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty." *Bank of America Corp.* v. *Lemgruber*, 385 F. Supp. 2d 200, 234 (S.D.N.Y. 2005) (Batts, D.J.).  The private interest factors include: "(1) the relative ease of access to proof; (2) availability of compulsory process for the attendance of unwilling, and the cost of obtaining the attendance of willing, witnesses; (3) possibility of view of premises; (4) enforceability of a judgment if one is obtained; and (5) 'all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *Id.* (quoting *Gulf Oil Corp.* v. *Gilbert*, 330 U.S. 501, 508 (1947)).

relative inconvenience and expense of defending the action. *Iragorri* v. *United Tech. Corp.*, 274 F.3d 65, 72 (2d Cir. 2001). Plaintiffs – through their agents – entered into license agreements with the Carnival Defendants with forum-selection clauses designating foreign fora and choice of law provisions compelling application of foreign law. Plaintiffs' attempt to circumvent the requirements of these mutually-agreed upon terms by choosing a federal district court in New York as the forum for this case should not be permitted. Moreover, neither plaintiffs nor the Carnival Defendants have any connection to New York; there are any number of more convenient fora for litigation than here, and plaintiffs' choice of the New York forum can – particularly in the face of their prior selection of fora – only be seen as a bid to avoid the expense of litigating where these claims belong by shoehorning into a New York court a series of foreign law claims against a variety of defendants registered in different foreign countries, sailing largely outside of the United States in different territories, and operating under different (and foreign) performance licenses that require adjudication elsewhere.

### 2. The fora selected in license agreements are adequate

For the purposes of the *forum non conveniens* analysis, an alternative forum is considered adequate "if the defendants are amenable to service of process there, and if it permits litigation of the subject matter of the dispute." *Pollux Holding Ltd.* v. *The Chase Manhattan Bank*, 329 F.3d 64, 75 (2d Cir. 2003). The mutually-agreed upon forum-selection clauses in the PRS, BUMA, and SPAC licenses require that all parties to the agreement, including the Carnival Defendants, be subject to the jurisdiction of courts in England, the Netherlands, and Miami, respectively. Consequently, the Carnival Defendants would be amenable to service of process in all of these jurisdictions. The law in each of these jurisdictions also provides for the adjudication of copyright disputes. *See* Copyright, Designs and Patents Act, 1988, c.48 (Eng.); The Copyright Act,

1912, *last amended by* Act of Mar. 8, 2007 (StB. 2007, 108) (Netherlands); Law on Copyright and

Neighboring Rights and Enacting Other Provisions, Law No. 15 (Aug. 8, 1994) (Panama). Any of

these adjudicatory bodies would be capable of entertaining plaintiffs' claims. Indeed, the parties

themselves specified fora for such a purpose and plaintiffs – who intentionally exploit their works

from *Grease* internationally and who could reasonably expect to litigate in foreign territories to

protect their rights – should not now be permitted to evade the very foreign fora they selected.

### 3. The balance of public interest and private interest factors strongly favors dismissal

As discussed in Section I, *supra*, plaintiffs have no claims arising under United States

copyright law against the Carnival Defendants. Courts in this Circuit have found that in cases where

issues of foreign law dominate, choice of law considerations militate in favor of dismissal. *See, e.g.*,

*Pollux*, 329 F.3d at 76 (upholding district court finding that the "overwhelming majority of

plaintiffs' claims necessitate the application of English law" and that "choice of law considerations

strongly tipped in favor of litigation in England"); *Do Rosario Veiga* v. *World Meteorological Org.*,

486 F. Supp. 2d 297, 307 (S.D.N.Y. 2007) (deferring to Swiss courts to apply Swiss law); *Murray* v.

*British Broadcasting Corp.*, 906 F. Supp. 858, 865 (S.D.N.Y. 1995) (observing that the "need to

apply foreign law to this case militates in favor of dismissal"); *see also Victoriatea.com, Inc.* v. *Cott

Beverages Canada*, 239 F. Supp. 2d 377, 387 (S.D.N.Y. 2003) ("[a]n action should be tried in a

forum familiar with the law governing the case"). Furthermore, there is a public interest in having

fora interpret their own laws. *See Odyssey Re (London) Ltd.* v. *Stirling Cooke Brown Holdings Ltd.*,

85 F. Supp. 2d 282, 307 (S.D.N.Y. 2000).

In addition, New York has no local interest in this case. Beyond the simple assertion

that the Carnival Defendants' ships sail to and from many ports around the world, including the Port

of New York, and a conclusory statement that defendants planned, prepared, and authorized acts of

infringement "in New York and the United States," the amended complaint makes no allegation tying this controversy to New York. (*See, e.g.*, FAC ¶¶ 9, 10, 12, 47.) Neither plaintiff is a citizen of New York, and none of the alleged infringements took place in New York. The licenses governing performances aboard the Carnival Defendants' ships were executed between the Carnival Defendants and foreign licensing agencies. The performance licenses at issue, in turn, all mandate application of foreign law. In *Stewart* v. *Adidas, A.G.*, No. 96 Civ. 6670 (DLC), 1997 WL 218431 (S.D.N.Y. Apr. 30, 1997), the plaintiff brought claims against Adidas for infringing on the copyright of certain of the plaintiff's designs. *Id.* at *1. Defendant moved to dismiss the claims brought under German law based on forum non conveniens. *Id.* at *6. The court dismissed these claims, explaining that "New York . . . has very little interest in adjudicating Stewart's German law claims. The actions of which Stewart complains took place largely outside of the United States and involve foreign law. Even Stewart no longer resides in New York. It would be simply unfair to impose the burden of service on a New York jury because of the attenuated contact of New York to the controversy." *Id.* at *7.

Likewise, neither of the plaintiffs in this case is a resident of New York. Plaintiff Jacobs is a resident of California, while Plaintiff Harris, N.A. – the trustee of Warren Casey's estate – is a corporation located in Chicago, Illinois. (FAC ¶¶ 4, 5.) Plaintiffs would not be inconvenienced by litigating their claims in England, the Netherlands, or Miami, Florida.

As a result, the doctrine of *forum non conveniens* counsels the dismissal of claims related to ships governed by the BUMA and SPAC licenses. The performance licenses issued by BUMA and SPAC specify *exclusive* jurisdiction in the courts of the Netherlands and arbitration in Miami, Florida, respectively. Consequently, plaintiffs' choice of forum should be given little deference, in light of the exclusive forum-selection clauses in place. Moreover, the mandatory

23

nature of these forum-selection clauses weighs heavily in favor of having these claims adjudicated in the mutually-agreed upon fora. The public interest factors, as articulated above, also militate in favor of dismissal.

Likewise, claims against ships licensed by PRS should be adjudicated in England. The PRS license has clear choice of law and forum-selection clauses, which mandate the application of English law and require parties to submit to the "non-exclusive" jurisdiction of the English Courts. (*See, e.g.*, Ehrenreich Aff., Ex. 1, ¶ 14.) As discussed above, choice of law considerations and other public interest factors make England the more convenient forum for litigating this case. The need to apply English law, coupled with the public interest consideration in having fora interpret their own laws, weighs heavily in favor of England serving as the adjudicatory forum. *See Odyssey Re (London)*, 85 F. Supp. 2d at 307.

Finally, even if the performance licenses at issue do not govern this dispute, plaintiffs still cannot point to any interest New York has in this controversy. All of the ships sail largely outside of United States territorial waters and all are registered in foreign countries. The public interest factors tilt in favor of dismissal. Because there is no local interest in this action, maintaining this action in New York courts will only serve to further congest the Court's docket and "burden[] citizens in an unrelated forum with jury duty." *Bank of America Corp.*, 385 F. Supp. 2d at 234. As a result, plaintiffs' claims must be dismissed pursuant to the doctrine of *forum non conveniens*.

## Conclusion

For the foregoing reasons, the Carnival Defendants respectfully request that this

Court dismiss the First Amended Complaint with prejudice.

Dated: June 26, 2009
New York, New York

Respectfully submitted,

PAUL, WEISS, RIFKIND, WHARTON & GARRISON
LLP

By: /s/ Lewis R. Clayton
      Lewis R. Clayton (lclayton@paulweiss.com)

1285 Avenue of the Americas
New York, New York  10019-6064
(212)  373-3000

Attorneys for Defendants Carnival Corporation, Carnival
Cruise Lines, Carnival PLC, Holland America Line Inc.,
Princess Cruise Lines, Ltd.

25